[Cite as *State v. Garza*, 2013-Ohio-5492.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HENRY COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  7-13-04

      v.

TOMAS G. GARZA,                  O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Henry County Common Pleas Court
Trial Court No. 12CR0076

**Judgment Affirmed**

Date of Decision:   December 16, 2013

APPEARANCES:

    *Gregory L. VanGunten* for Appellant

    *John H. Hanna and J. Hawken Flanagan*  for Appellee

**WILLAMOWSKI, J.**

{**¶1**} Defendant-appellant, Tomas G. Garza ("Garza"), appeals the judgment of the Henry County Court of Common Pleas denying his motion to suppress. For the reasons that follow, we affirm the judgment of the trial court.

{**¶2**} On July 23, 2012, Patrolman Justin Ruffer ("Ruffer") of the Napoleon Police Department appeared before the judge of the Napoleon Municipal Court for the purpose of obtaining a search warrant for Garza's residence located at 327 Carey St. in Napoleon, Ohio. Ruffer presented the judge with a sworn affidavit in support of the search warrant. The affidavit provided the following facts.

{**¶3**} Ruffer had been a patrolman for the Napoleon Police Department in Henry County, Ohio, for approximately 1 year and 1 month. He had been trained and educated in the area of criminal investigations. On July 23, 2012, the Napoleon Police Department was notified of a drug transaction occurring at 327 Carey St. in Napoleon. The residence was rented by Tomas Garza. Ruffer investigated the report as a drug possession case and he made contact with a witness who had observed the residence at 327 Carey St. for the previous month and a half. The witness informed Ruffer that during that time she had observed considerable traffic in and out of the residence. Among other examples, she had observed the following activity repeating in front of the residence: a maroon colored GMC pickup truck would stop at or near the residence and "drop off" a female; the female would enter the residence at 327 Carey St.; the female would

-2-

stay at or in the residence for a few minutes and would leave to be then picked up by the driver of the maroon colored GMC pickup truck.

{¶4} The affidavit further stated that the witness had observed these specific events on the date of July 23, 2012: a female exited the maroon colored GMC vehicle; the female had short brownish red hair and was wearing a red T-shirt and blue jeans; the female entered the residence at 327 Carey St., together with Garza; approximately 10 minutes later, the female exited the residence and was "stuffing an unknown item into her purse"; the female got into the maroon colored GMC pickup truck in front of 942 Haley Ave. Ruffer, who observed the described vehicle, initiated a traffic stop on the vehicle due to a marked lanes violation. Ruffer identified the driver of the vehicle as Douglas Nash and the passenger as Stephanie Nash. Stephanie Nash matched the description given by the witness of the female who had visited Garza's residence. After obtaining a verbal consent to search the vehicle, Ruffer found two tin foil balls under the vehicle's front passenger seat; they were identified by the female as cocaine. Ruffer also found a plastic bag with white powder in the center counsel of the vehicle that he believed to be cocaine. Based on the information provided by the witness and the discovery of illegal narcotics in the vehicle, Ruffer believed that Stephanie Nash had obtained the illegal narcotics from the residence at 327 Carey St.

{¶5} The judge who reviewed Ruffer's affidavit made general inquiries as to its contents.[1] (R. 39, Tr. of Proceedings at 14, Dec. 3, 2012.) We do not have before us a record of the inquiries made by the judge. We note that the record includes a handwritten statement made by the witness on July 23, 2012, where the witness is identified with her first and last name, address, date of birth, and a state ID number. (R. 39, Tr. of Proceedings Ex. 1.) That statement includes some of the information contained in Ruffer's affidavit and further provides that Garza's residence is frequented by a person known to the witness as a drug user. The record does not indicate whether the judge considered the witness's handwritten statement prior to issuing the warrant. The judge issued a warrant to search Garza's residence for "Illegal Narcotics and/or Drug Paraphernalia." (Tr. of Proceedings Ex. 3, Search Warrant.) Subsequently, Garza was arrested and charged with possession of cocaine.

{¶6} On November 21, 2012, Garza filed a motion to suppress, requesting the trial judge to rule that all physical evidence seized by the Napoleon Police Department incidental to the search of his residence on July 23, 2012 and all statements Garza made incidental to the search be excluded from the prosecution of the case against him. (R. 17, Mot. to Suppress, Nov. 21, 2012.) In support of his motion, Garza argued that the affidavit of Patrolman Ruffer was insufficient to

---

[1] Garza does not challenge the trial court's finding that the judge who issued the search warrant questioned Ruffer regarding the affidavit prior to approving the search warrant and that there was no indication of Ruffer being untruthful in his representations to the judge.

provide the issuing judge with probable cause for a search warrant. Garza specifically contended that the warrant was deficient because it did not identify the witness and did not provide any reference to the witness's reliability. He further asserted that even if the witness were reliable, she did not observe anything criminal and therefore, her statements were insufficient to provide probable cause for a search warrant. Garza additionally argued that the affidavit failed to provide any connection between the drugs found in the car driven by the Nashes ("the Nash vehicle") and Garza or his residence.

{¶7} On December 13, 2012, the trial judge conducted a hearing on the motion to suppress. (*See* R. 39, Tr. of Proceedings.) Garza was present together with his attorney. Ruffer and the witness who had provided the relevant information for the affidavit testified at the hearing. Following the hearing, the trial court denied Garza's motion to suppress. The trial court found that although "[t]he affidavit does not identify the source of the information which led to the stop of the vehicle," the source "was never portrayed as a confidential informant." (R. 26, J. Entry at 3, Dec. 18, 2012.) The trial court further found that the source's suspicions of drug activity were corroborated by the presence of cocaine in the Nash vehicle, which matched the source's description of the vehicle from 327 Carey St. The trial court also considered, as supportive of the probable cause, the fact that the vehicle was present at the residence for short periods of time over the

previous month and that it was stopped within "the close proximity in time and place" to the events described by the witness. (*Id.*)

{¶8} Subsequently, Garza entered a plea of no contest to possession of cocaine and was sentenced to a five-year prison term and five years of post-release control. The sentence was stayed pending this appeal in which Garza raises one assignment of error.

> **THE TRIAL COURT COMMITTED CONSTITUTIONAL ERROR BY FAILING TO SUPPRESS EVIDENCE DERIVED FROM A SEARCH INCIDENT-TO-WARRANT WHERE: A.) THE COURT FAILED TO CONSCIENTIOUSLY REVIEW THE SUFFICIENCY OF THE PROBABLE CAUSE AFIDAVIT [SIC] TO INSURE THAT THE ISSUING MAGISTRATE DID NOT ABDICATE HER DUTY BY ISSUING THE WARRANT BASED UPON THE BARE BONES CONCLUSIONS OF OTHERS; AND B.) THE COURT CONSIDERED EVIDENCE OUTSIDE THE FOUR CORNERS OF THE AFFIDAVIT AND FAILED TO FOLLOW LEGAL PRECEDENT IN THIS ARENA (U.S. CONSTITUTION, 4TH AMENDMENT, OHIO CONSITUTION [SIC], ARTICLE I, §14).**

{¶9} We will start by addressing the second point of Garza's assignment of error. Garza challenges the trial court's findings of fact, as contained in its judgment entry on the suppression motion, arguing that the trial court improperly considered evidence outside of the four corners of the warrant application.

*Evidence to be Considered in Reviewing Sufficiency*
*of the Affidavit in Support of a Search Warrant*

{¶10} When reviewing the sufficiency of an affidavit in support of a search warrant, both the trial court and the appellate court are limited to the information

that was "brought to the attention of the [issuing judge]." *State v. Graddy*, 55 Ohio St.2d 132, 134, 378 N.E.2d 723 (1978), fn.1; *State v. OK Sun Bean*, 13 Ohio App.3d 69, 71, 468 N.E.2d 146 (6th Dist.1983) ("the affidavit's legal sufficiency may be determined *only* from the information actually furnished to the issuing judge.") (Emphasis sic.) That often implies that the reviewing court is bound by the "four corners" of the affidavit, as that is often the only record available before it. *OK Sun Bean*, 13 Ohio App.3d at 71. *See, e.g.*, *State v. King*, 157 Ohio App.3d 93, 2004-Ohio-2221, 809 N.E.2d 71, ¶ 12 (3d Dist.) (limiting the review of the sufficiency of probable cause in the affidavits "to the affidavits themselves, as that was the evidence before the issuing magistrate.").

{¶11} It does not necessarily mean, as Garza contends in his brief, "that all courts reviewing the sufficiency of a probable cause affidavit confine themselves to the sworn statements contained within the four corners of the affidavit itself. * * * This rule applies to the issuing [judge] as well as all courts reviewing the matter." (App't Br. at 5.) Garza's suggestion is expressly contradicted by Crim.R. 41(C), which allows for additional evidence, in the form of the affiant's testimony, to be considered by the issuing judge. *See OK Sun Bean*, 13 Ohio App.3d at 71, fn. 2 ("Crim.R. 41(C) makes provision for an affidavit hearing, if needed, and further provides that the affiant's testimony from such hearing shall be admissible at a subsequent hearing on a motion to suppress."). Crim.R. 41(C) states:

> Before ruling on a request for a warrant, the judge may require the affiant to appear personally, and may examine under oath the affiant and any witnesses the affiant may produce. Such testimony shall be admissible at a hearing on a motion to suppress if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit.

Crim.R. 41.

{¶12} The record before us shows that Ruffer appeared personally before the issuing judge and was questioned under oath. (Tr. of Proceedings Ex. 3, Search Warrant; Tr. of Proceedings at 14.) It does not appear that his testimony was "taken down by a court reporter or recording equipment" and transcribed. Crim.R. 41. Accordingly, it was not, nor could it have been, made part of the affidavit pursuant to Crim.R. 41, and we do not rely on it.

{¶13} The record before us does not disclose what other information, if any, was available to the issuing judge. Our record on appeal includes the Voluntary Statement given to Ruffer by the witness,[2] Affidavit in Support of Search Warrant, the Search Warrant itself, and the Transcript of Proceedings from the trial court's hearing on the motion to suppress. Therefore, for the purpose of this review, we will presume that the issuing judge signed the search warrant based on the information provided to her by Ruffer, insofar as it is evidenced to be so provided by the above documents. It follows that the trial court was not

---

[2] Because the record does not indicate whether this statement was provided to the issuing judge or whether it was examined by the issuing judge, we do not consider this statement in arriving at our decision.

allowed to consider any evidence adduced at the hearing that was not proven to be known to the issuing judge prior to the issuance of the search warrant.

{¶14} Garza points out that the trial court made fourteen findings of fact, some of which were derived from the suppression hearing and were not included in the affidavit in support of the search warrant for 327 Carey St.  For example, the trial court identified the source of the information that Ruffer included in his affidavit, although the identity of that witness was not disclosed on the face of the affidavit.  Further, the trial court found that the maroon colored pickup truck visited Garza's residence weekly, although the affidavit did not indicate the frequency of the Nash vehicle visits to the residence.  The trial court also found that the driver of the maroon pickup truck denied the drugs to be his property, while the female passenger refused to identify the drugs' origin.  Although these facts are not included in the Affidavit in Support of Search Warrant, we cannot conclude, as Garza urges us to, that the issuing judge was unaware of the informant's identity or of any other additional facts.  But because we do not have before us a record of such facts being presented to the issuing judge, we do not consider them in arriving at our decision herein.[3]

{¶15} We also find that although the trial court made its fourteen findings of fact based on the testimony presented at the suppression hearing, it did not

---

[3] As a corollary, we do not consider the facts cited by Garza in his brief, such as the fact that the informant "admitted that she lacked any 'inside information' of drug trafficking from Mr. Garza's home."  (App't Br. at 3.)

expressly apply these fourteen findings to its analysis of the affidavit's sufficiency. Rather, the trial court's ruling on the suppression motion was based on the facts in the affidavit: the information provided by the witness and corroborated "by the valid traffic stop and consent search of the Nash vehicle which revealed the presence of cocaine," as well as by "the prior presence of the vehicle at the residence for short periods over the last month and the close proximity in time and place to the recent stop." (R. 26, J. Entry at 3.)

{¶16} Garza takes issue with the trial court's finding that the vehicle was stopped within "the close proximity in time and place" to the events described by the witness. He argues that since the affidavit does not state where Ruffer stopped the "Nash vehicle," the trial court's finding of the close proximity is improper as it is unsupported by the affidavit. Indeed, the affidavit does not specify the time and place of the traffic stop, but it states, "The witness indicated that the female got into a maroon colored GMC pick-up in front of 942 Haley Ave. in the City of Napoleon. The affiant observed the described vehicle and initiated a traffic stop on the vehicle due to a marked lanes violation." (Tr. of Proceedings Ex. 2, Aff. Supp. Search Warrant.) These two sentences neither support nor contradict an inference that the traffic stop occurred shortly after the female got into the vehicle and within a close distance to the place. Further, these statements do not preclude an inference by the trial court or by the issuing judge that the cocaine found in the Nash vehicle came from Garza's residence. *See State v. Cook*, 3d Dist. Putnam

No. 12-02-12, 2003-Ohio-1794, ¶ 7, quoting *State v. OK Sun Bean*, 13 Ohio App.3d 69, at paragraph two of the syllabus ("An appellate court, in assessing the legal sufficiency of an affidavit supporting a probable cause finding, 'may draw reasonable, common sense inferences from the allegations contained therein' if such inferences are drawn from facts already set forth in the affidavit."); *State v. Kinney*, 83 Ohio St.3d 85, 96, 698 N.E.2d 49 (1998) ("magistrates ought to be permitted to make common-sense inferences supported by other evidence in the affidavits."). Accordingly, Garza's challenge to the trial court's decision, as it relates to its finding of "the close proximity in time and place" between the events described by the witness and the stop of the Nash vehicle, is not well taken. Even if this specific "proximity" finding by the trial court went beyond the facts provided in the affidavit, it did not invalidate the trial court's conclusion that "the information before [the issuing judge] justified issuance of the warrant." (R. 26, J. Entry at 4.)

{¶17} Continuing our analysis of Garza's challenge to the trial court's decision denying his motion to suppress, we will look at the face of the affidavit, as this is the only tangible evidence that the record shows to have been in front of the issuing judge at the time when she issued the warrant. But we will also consider the fact that the issuing judge questioned Ruffer about the contents of the affidavit, as is evidenced by the warrant itself and by Ruffer's subsequent testimony at the hearing.

*Standard of Review*

**{¶18}** Garza claims that in its decision on his motion to suppress, the trial court used an improper standard of review that, although mandated by the Ohio Supreme Court, contradicts with the "more plenary standard employed in the Sixth Circuit." (App't Br. at 4.) He urges us to apply a "de-novo-with-deference" review that would require us to review de novo the sufficiency of the affidavit and then, give "great deference" to the judge's decision to issue the warrant. We are unpersuaded by Garza's extensive argument in favor of changing the long established precedent and we continue to follow the standard of review established by the Ohio Supreme Court that expressly rejected the use of a de novo standard for review of the affidavit in support of a search warrant, characterizing it as "substitut[ing] [the reviewing court's] judgment for that of the [issuing judge]." *State v. George*, 45 Ohio St.3d 325, 332, 544 N.E.2d 640 (1989).

> In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*Id.* at paragraph 2 of the syllabus, citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983).

**{¶19}** Therefore, the question on this appeal is not whether *we* would find probable cause to issue the search warrant if the information, as provided to us by the record on appeal, had been presented to us on July 23, 2012 by Patrolman Ruffer. Rather, our review of the issuing judge's determination of probable cause is limited to ensuring that the judge "had a substantial basis for concluding that probable cause existed." *Id.*

**{¶20}** In determining whether the issuing judge abdicated her duty in issuing the warrant, we are guided by the common sense "totality-of-the-circumstances test" of the Ohio Supreme Court, which stated in *George*:

> The totality-of-the-circumstances test of *Illinois v. Gates, supra,* is concisely set forth in that decision at 238–239, 103 S.Ct. at 2332:

> "The task of the issuing magistrate is simply to make a practical, *common-sense decision* whether, given *all the circumstances* set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

(Emphasis added.) *Id.* at 329; *see also State v. Thomas*, 61 Ohio St.2d 223, 227-28, 400 N.E.2d 401 (1980), citing *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741 (1965) ("In examining the affidavit for a search warrant in the cause sub judice, we are guided by the interpretive rules that such affidavits are to be tested in a common sense manner * * * ."). We will apply this common sense

totality-of-the-circumstances test to both "the original probable cause determination" of the issuing judge and to our determination of whether the issuing judge had a "substantial basis" for finding probable cause. *George,* 45 Ohio St.3d at 329.

**{¶21}** Garza argues for the use of the "more plenary review" in this case because of the existence of a hearsay informant. He asserts that "the more plenary standard becomes necessary where informants' [sic] hearsay within the affidavit is legally discounted on appeal," for example when "some of the facts in the affidavit before the magistrate have since been stricken" due to being "not correctly before the issuing magistrate." (App't Br. at 12-13.) This argument is misplaced because we have no basis for legally discounting the witness's statements on this appeal and no facts from the affidavit have been stricken.

**{¶22}** Therefore, in our review of the sufficiency of the affidavit, we apply the deferential standard of review mandated by the Ohio Supreme Court.

*Conscientious Review of the Sufficiency of the Affidavit*

**{¶23}** Garza contends that the trial court "failed to conscientiously review the sufficiency of the probable cause afidavit [sic]" that was allegedly issued based upon the "bare bones" conclusions of others and that failed "to establish the evidentiary 'nexus' between the drugs found off-site in the 'Nash vehicle' and the search of Mr. Garza's home." (App't Br. at 4.)

{¶24} Garza discusses a factually similar Ohio Supreme Court case, *State v. Graddy* and suggests that, based on this precedent, we are bound to hold that the affidavit here was insufficient for the probable cause determination because it provided no basis to conclude that the informant was credible or her information reliable. *See State v. Graddy*, 55 Ohio St.2d 132, 378 N.E.2d 723 (1978). Although *Graddy* was decided prior to the United States Supreme Court's decision in *Gates*, which changed the standard of review for sufficiency of probable cause affidavits, Garza suggests we follow the Ohio Supreme Court's analysis as it relates to the facts of the current case.

{¶25} In *Graddy*, a warrant was issued based on an affidavit alleging that a police detective believed that drugs were located in the described premises. That affidavit contained allegations from an informant whose reliability was unsupported by any facts in the affidavit. *Id.* at 136-137. Further, the conclusion that drug activity was occurring was also unsupported by any facts in the affidavit. *Id.* The Ohio Supreme Court held that "the belief or conclusion of the affiant, or the informant in a situation where hearsay is furnished by informant to the affiant, *without presentation of the facts to the magistrate upon which the conclusion is based*, is constitutionally an insufficient basis upon which the magistrate may determine the existence of probable cause." (Emphasis added.) *Id.* at 134. The court specifically focused on the fact that the affidavit lacked "Any of the

underlying circumstances from which the informant concluded the drugs were on the premises." *Id.* at 139.

{¶26} The distinctions between *Graddy* and the current case are readily apparent. First, the affidavit here stated that the informant's conclusions or suspicions of criminal activity were based on her observation of "considerable traffic in and out of the residence," her observation of the maroon GMC pick-up truck for the last month and a half stopping in front of Garza's residence and dropping off a female who visited for short periods of time, and her observation on the day in question of the female visiting for a short period of time and stuffing an unknown item into her purse while exiting the residence. Therefore, the affidavit had more than "bare bones conclusions"—it presented the facts upon which the informant's conclusion was based. Second, the affidavit herein recited information and criminal evidence gathered by Ruffer in the subsequent observation and search of the Nash vehicle. Thus, unlike the affidavit in *Graddy*, the affidavit in this case provided the issuing judge with additional factual bases for probable cause that a criminal activity occurred.

{¶27} The Ohio Supreme Court held that "a common and acceptable basis for the informant's information is his personal observation of the fact or events described to the affiant and that these observations may be given added weight by the extent of the description or by corroborative police surveillance and information." *Graddy*, 55 Ohio St.2d at 139-140, citing *State v. Karr*, 44 Ohio

St.2d 163, 165, 339 N.E.2d 641 (1975). This case involves the informant's personal observation of the facts and events described to Ruffer, and additional police information about the finding of drugs in the vehicle that was the subject of informant's tip. Accordingly, the Ohio Supreme Court's holding in *Graddy* does not contradict, but rather supports, the trial court's determination that the search warrant for Garza's residence was properly issued upon the information provided by the witness, as well as the observations and findings made by Ruffer who was trained and educated in the area of criminal investigations.

{¶28} Furthermore, subsequent to *Gates*, the affiant is not required "to reveal his informant's 'basis of knowledge' and provide sufficient facts to establish the informant's 'veracity' or the 'reliability' of the informant's report" in order to give grounds for a probable cause finding. *See George*, 45 Ohio St.3d at 328, fn. 3. Instead, the magistrate must be provided with enough information to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, *including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information*, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Emphasis added.) *Id.* at 329, quoting *Gates*, 462 U.S. at 238-239. *See also State v. Gibler*, 3d Dist. Defiance No. 4-2000-06, 2000 WL 1344545, *6 ("an unidentified informant's 'reliability,' 'veracity,' and 'basis of knowledge' should not be examined as separate elements, but rather are merely part of the totality of

the information to be weighed by the [issuing judge] in making a probable cause determination.").

**{¶29}** Therefore, Garza fails in his attempt to invalidate the affidavit on the basis that it did not provide the issuing judge "with sufficient information to substantially and independently evaluate the credibility and reliability of the unnamed hearsay informant." (App't Br. at 17.)

**{¶30}** Garza further contends that, even if the informant was credible, the information provided by her—observation of considerable traffic, the short visits of the maroon colored GMC vehicle, and the woman exiting Garza's residence stuffing an unknown object into her purse—was susceptible to an innocent explanation and so, could not have been the basis for the probable cause determination. The trial court, however, did not uphold the search warrant relying solely on this information from the witness, pointing out that it was "nothing more than a suspicion and in and of itself not enough for a warrant." (R. 26, J. Entry at 3.) The trial court looked at all of the circumstances, including the results of the stop and search of the Nash vehicle, and held that these additional circumstances sufficiently verified "the reliability of the information provided." (*Id.* at 4.) We agree with the trial court's conclusion that Ruffer's observations and finding of drugs in the Nash vehicle verified the reliability of the informant's suspicion of criminal activity at the residence, which arose from her observation of the traffic in front of Garza's residence and the Nashes' short visits there. Ruffer's

observations did "more than merely bolster the informant's tip," they "provided the underlying circumstances" from which the issuing judge could determine whether Ruffer and the informant were "justified in concluding that illegal activity is taking place." *Graddy*, 55 Ohio St. at 140.

{¶31} Garza points out that the affidavit lacks any assertion of the witness having "inside information of a 'crime-in-fact'" or the Nashes themselves revealing "the source of the drugs found in their vehicle." (App't Br. at 18.) This, according to Garza, results in a lack of a "nexus" between Garza's residence and the criminal activity. (*Id.* at 21.) He claims that, even if the witness's information was reliable and showed that the Nashes were involved in a criminal activity, it was improper for Ruffer, the issuing judge, and the trial court to infer that the drugs could be found in Garza's residence, because there was no direct proof of connection between the drugs found in the Nash vehicle and Garza's house. Although Garza is correct in his assertion that there was no direct proof that the drugs found in the Nash vehicle came from his residence, we do not agree that this invalidates the search warrant.

{¶32} The amount of proof sufficient for a probable cause determination does not necessarily require certainty that criminal activity is occurring at the defendant's premises. All that is required is "a fair probability that contraband or evidence of a crime will be found in a particular place." *George*, 45 Ohio St.3d 325, at paragraph one of the syllabus, quoting *Gates*, 462 U.S. at 238-239.

> The term probable cause, according to its usual acceptation, means less than evidence which would justify condemnation. It imports a seizure made under circumstances which warrant suspicion. More recently, we said that the *quanta* of proof appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. It is clear that *only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.*

(Alterations and internal quotation marks omitted.) (Emphasis sic.) *Id.* at 329, quoting *Gates,* 462 U.S. at 235. Likewise, in our review of the affidavit, we are not required to find proof of inside knowledge or of a direct connection between the drugs found in the Nash vehicle and Garza's residence. We merely ensure that the issuing judge had a "substantial basis" for concluding that there was probable cause that such direct connection existed. *Id.*

{¶33} As we concluded above, the affidavit presented to the issuing judge provided more than a mere suspicion of possible criminal activity occurring at Garza's residence. Looking at the totality of the circumstances, we hold that the issuing judge, could properly infer that the criminal evidence, found in the vehicle that visited Garza's premises frequently for short periods of time and that was stopped on July 23, 2012, after it left Garza's residence, came from that residence. Therefore, under the deferential review, mandated by the Ohio Supreme Court, we hold that the issuing judge had a substantial basis for concluding that the information presented to her by Ruffer was sufficient for a fair probability that

"Illegal Narcotics and/or Drug Paraphernalia" were concealed in Garza's residence at 327 Carey St. on July 23, 2012. (Tr. of Proceedings Ex. 3, Search Warrant.)

{¶34} Based upon the foregoing, we hold that the trial court did not err in denying Garza's motion to suppress. For that reason, his assignment of error is not well taken. Having found no error prejudicial to Appellant, in the particulars assigned and argued, we affirm the judgment of the Henry County Court of Common Pleas.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**